Secomb agt. Milwaukee and St. Paul Railway Co.

# U. S. SUPREME COURT.

DAVID A. SECOMB, plaintiff in error, agt. THE MILWAUKEE
AND ST. PAUL RAILWAY COMPANY.

*The exercise of the right of eminent domain.*

A body which has a legal corporate existence is capable of performing an
act of condemnation of private property for public use.

It is in the discretion of the legislature to determine the mode of exercising
the right of eminent domain, subject to the organic law.

The construction of a railroad is a public necessity in contemplation of
law, and the taking of private property for its construction is legal.

*October Term,* 1874.

IN error to the circuit court of the United States for the
district of Minnesota.

Mr. justice DAVIS delivered the opinion of the court.

This is an action of ejectment to recover possession of a
town lot in Minneapolis, occupied by the defendant in error
as a part of its road-bed. The case was tried by the court
without the intervention of a jury, and the only material
point for inquiry is whether, on the whole case, the decision
of the court below, which was adverse to the plaintiff, was
correct. It is true there was an objection to the ruling of
the court admitting evidence, but it is unnecessary to notice
it, because this evidence was the basis on which the court
rested its judgment, and without it the defense is not sustained.

The case was this: Hiram Osborn and Ovid Pinney were,
in 1863, the owners of the premises in controversy; and, in
1870, by deeds of quit-claim conveyed all the right they had

in the property to the plaintiff. Long before these convey-
ances, the Minnesota Central Railroad Company, under whom
the defendant claims, located and built a railroad across the
premises, and occupied it for railroad purposes.

The defendant insists that this occupation was lawful, for
the reason that the company took the proper steps to condemn
the land, and had the right to condemn it. Whether this is
so of necessity, depends on the laws of the state; and if these
laws have been construed by the highest court of the state, in
a case of similar character, the federal courts are relieved of
all difficulty.

We do not feel called upon to enter into an examination of
the several acts on this subject, both public and private, which
are quite numerous, in order to show that the Minnesota
Central Company had a corporate existence, and was, there-
fore, capable of performing an act of condemnation. It is
enough to say that the point is settled in favor of the com-
pany by the decision and reasoning of the supreme court of
Minnesota, in the case of the *First Division of the St. Paul
and Pacific Railroad Company* agt. *Parcher* (14 *Minnesota
R.*, 207).

The Minnesota Central Company was authorized by law to
procure the condemnation of land for the use of its road, and
from the findings of fact by the circuit court, it sufficiently
appears that the statutory provisions on the subject were
observed.

It is no longer an open question in this country that the
mode of exercising the right of eminent domain, in the
absence of any provision in the organic law prescribing a
contrary course, is within the discretion of the legislature.
There is no limitation upon the power of the legislature in
this respect, if the purpose be a public one, and just compen-
sation be paid or tendered to the owner for the property
taken. This general rule has received the sanction of the
supreme court of Minnesota in analogous cases to the one at
bar (*Weir* agt. *The St. Paul, Stillwater and Taylor's Falls*

*R. R. Co.*, 18 *Minnesota*, 155; *Langford* agt. *Commissioners of Ramsey County*, 16 *Minnesota*, 375).

It hardly need be said that the taking of private property in order that a railroad may be constructed is a public necessity. It is urged that the property in controversy was occupied before the proceedings in condemnation were begun; but there is nothing in the findings of fact to show that this was so. Even if the plaintiff were in a situation to make the objection it would not avail him; for prior occupation without authority of law would not preclude the company from taking subsequent measures authorized by law to condemn the land for their use. If the company occupied the land before condemnation, without the consent of the owners, and without any law authorizing it, they are liable in trespass to the persons who owned the land at the time, but not the present plaintiff.

It is urged, also, against the validity of the award of the commissioners, that it was not made in reasonable time, or the amount of it ever paid or tendered to the parties in interest. Whether this be so or not does not concern the plaintiff. It is enough for him to know that a judgment was entered confirming the award, and the money paid into the court for the use of Pinney and Osborn; and is there now unless they have seen fit to withdraw it. It is a fair presumption, as both these persons had notice, actual or constructive, of the proceedings in condemnation, and took no steps to review them, that they were either satisfied with the award, or concluded they could not make successful opposition to it.

This suit is an effort to question the priority of the condemnation and sale of the property in a collateral proceeding, not by the party even whose land was appropriated, but by a stranger to the original proceeding, who, whatever his motive in buying, got no other estate than the original owners could convey—a fee subject to the easement of the railroad company. The judgment of condemnation in this case was ren-

dered by a competent court, charged with a special statutory jurisdiction, and all the facts necessary to the exercise of this jurisdiction are shown to exist. A judgment thus obtained is no more subject to impeachment in a collateral proceeding than the judgment of any other court of exclusive jurisdiction (1 *Redfield on Railways*, 5th ed., *p.* 271).

If it were so, railroad companies would have no assurance that the steps taken by them to procure the right of way would conclude any one, and they would be constantly subject to vexatious litigation.

The judgment of the circuit court is affirmed.